Filed 7/29/22  P. v. Walker CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

FLOYD ROLAND WALKER III,

    Defendant and Appellant.

E077548

(Super.Ct.No. INF1402616)

OPINION

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Melissa Mandel, Acting Assistant Attorney General, Charles C. Ragland, Warren Williams and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant, Floyd Roland Walker III, of inflicting corporal injury upon a cohabitant. (Pen. Code, § 273.5, subd. (a), count 2.)[1] The jury also found that defendant personally inflicted great bodily injury (GBI) upon the victim, under circumstances involving domestic violence. (§ 12022.7, subd. (e).) The court found true allegations that defendant had served two prior prison terms (§ 667.5, subd. (b)), had one prior serious felony conviction (§ 667, subd. (a)) (nickel prior), and had one prior strike conviction (§§ 667, subd. (c), (e)(1), 1170.12, subd. (c)(1)). (*People v. Walker* (Mar. 21, 2019, E067404) (*Walker I*).)[2]

The court sentenced defendant to an aggregate term of 17 years of imprisonment, including the upper term of four years, doubled pursuant to the strike prior, on the substantive offense. (*Walker I*, *supra*, E067404.) On remand from this court, the court declined to exercise its newfound discretion to strike the nickel prior. However, the court struck defendant's prior prison term enhancements pursuant Senate Bill No. 136 (2019-2020 Reg. Sess.), which resulted in a reduction in defendant's aggregate term of imprisonment of one year, but which still included the upper term on the substantive offense.

On appeal, defendant contends the matter must be remanded for a second time for resentencing pursuant to Senate Bill No. 567 (2021-2022 Reg. Sess.), which creates a

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

[2] On our own motion, we take judicial notice of the record in *Walker I*, *supra*, E067404, defendant's appeal of the judgment, including our unpublished opinion. (Evid. Code, § 459, 452, subd. (d).)

2

presumption for the imposition of the middle term at sentencing. The People respond that any error was harmless because "there was undisputed evidence of the aggravating circumstances that the trial court relied upon such that a jury would have found the circumstance to be true beyond a reasonable doubt." We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

At the time of the offense, the victim had dated defendant for about two years; they had a daughter together. On July 4, 2014, defendant, the victim, and their daughter, who was about 16 months old at the time, were staying at a hotel-casino. Throughout the day, defendant went back and forth between the hotel room and the casino, drinking and gambling. He returned to the hotel room a final time around 11:00 p.m.; he was drunk and angry. The victim was upset that she and their daughter had been stuck in the room all day, and that they had not seen the fireworks together. (*Walker I*, *supra*, E067404.)

Defendant started yelling and slapped the victim on the face at least twice. The victim went to lie down on the bed with their daughter to try and diffuse the situation. However, defendant still yelled at her and called her names. Defendant then hit the victim in the face. Their daughter woke up crying; the victim tried to calm her down. Defendant grabbed their daughter from the victim and would not give her back. He then stood up, held their daughter on his left side, and started punching the victim with his

---

[3] On October 27, 2021, defendant filed a request that this court take judicial notice of the April 28, 2016, minute order of the jury's verdict, which is contained in the record in *Walker I*, *supra*, E067404. The request is denied as moot since we are taking judicial notice of the record. (See fn. 2, *ante*.)

right hand; he also kicked her. The victim screamed and asked for their daughter back. Defendant went into the bathroom; the victim called the front desk. Eventually, two security guards knocked on her door. (*Walker I*, *supra*, E067404.)

The security guards observed that the victim had blood all over her face and was crying hysterically. She said, "He's beating me, get him, get my baby." They entered the room and saw defendant holding the baby, so they told him to put her down. The guards observed blood all over the room, including on the nightstand, telephone, side of the bed, the wall, and the carpet. The guards called the police. (*Walker I*, *supra*, E067404.)

A police officer arrived and observed that the victim was crying and shaking. Both of her eyes were starting to swell and turn black and blue; she had a cut above her left eye, bruising and swelling on her nose, and a bruise on the left side of her cheekbone. The victim went to the hospital and the dentist to be examined. For several days, she could not move her jaw or talk very well. (*Walker I*, *supra*, E067404.)

On April 12, 2016, the People charged defendant by first amended information with cohabitant abuse resulting in a traumatic condition (§ 273.5, subdivision (e)(1), count 1), cohabitant abuse (§ 273.5, subd. (a), count 2), and willful injury to a child (§ 273a, subd. (a), count 3). The People additionally alleged that, as to counts 1 and 2, defendant had inflicted GBI on the victim (§§ 12022.7, subd. (e), 1192.7, subd. (c)(8)), and defendant had committed all three offenses while released from custody (§ 12022.1). The People finally alleged that defendant had suffered two prior prison terms (§ 667.5, subd. (b)), one prior serious felony conviction (§ 667, subd. (a)), and one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

4

The jury found defendant guilty of cohabitant abuse (§ 273.5, subd. (a), count 2) but not guilty of cohabitant abuse resulting in a traumatic condition (§ 273.5, subd. (e)(1), count 1). The jury deadlocked on the count 3 offense. The jury also found that, in his commission of the count 2 offense, defendant personally inflicted GBI upon the victim under circumstances involving domestic violence. (§ 12022.7, subd. (e).)

At the bench trial on the priors, the People moved into evidence two section 969, subdivision (b), packets, which contained certified copies of defendant's relevant criminal records. The court found true allegations that defendant had served two prior prison terms (§ 667.5, subd. (b)), had one prior serious felony conviction (§ 667, subd. (a)), and had one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). (*Walker I*, *supra*, E067404.)

The probation officer's report reflects that defendant had convictions for 10 prior misdemeanor offenses and four prior felony convictions, the latter of which included two prior cohabitant abuse and two prior assault convictions. Defendant had previously had his probation revoked and had numerous prior parole violations.

Defendant declined to be interviewed for the report. The probation officer recommended the court sentence defendant to the upper term on count 2. She noted that there were "no mitigating factors which apply to the defendant or his offense. He has served multiple prison sentences for domestic violence and assault, and his criminal history paints a disturbing pattern of violence against women, which needs to end."

Defense counsel moved the court to strike defendant's prior strike conviction. He argued there were mitigating factors with respect to the instant offense including that

there was "great provocation." He pointed to evidence that another hotel guest testified she heard a woman screaming. Defense counsel argued that "[i]t appeared as if the male voice was more calm and reserved, whereas the female voice was louder and cursing."

The People argued, "defendant has a recidivist nature regarding domestic violence crimes. He has at least four prior felony domestic violence convictions within the last 15 years. He's been to prison twice in the last 15 years for domestic violence crimes. His strike prior is for a domestic violence related case." Defendant "made a verbal" motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), which the court denied.

As the court proceeded to sentencing, it noted that it had read and considered the probation officer's report, along with the People's sentencing memorandum. Defense counsel asked that his arguments made in support of the *Romero* motion be incorporated into his arguments regarding sentencing, and argued that the incident "started out as self-defense. I believe that would be mitigating."

The court then stated the following: "[T]here was no evidence presented that would support mitigation in this case. None. There's nothing presented to me through sworn testimony. There was a lot of just [defendant] making arguments from his chair,[4] which is not evidence. So there's nothing to support the idea that there was anything mitigating in there going on and that because of the GBI, because of his history and his record, I find that the aggravating circumstances far outweigh any mitigation whatsoever

---

**4** Defendant represented himself at trial.

and absolutely support a finding of upper term, especially given all of the prison sentences he's had."

The court sentenced defendant to an aggregate term of 17 years of imprisonment, consisting of the upper term on the substantive offense, doubled due to the prior strike; the low term of three years on the GBI enhancement; one year on the prior prison term; and five years on the prior serious felony conviction. The court struck the punishment on the second prison prior. The court dismissed count 3 on the People's motion.

Defendant appealed contending that he had received ineffective assistance of counsel when defense counsel failed to object to the court's dual use of two sentencing factors, the GBI and defendant's criminal history, in imposing the upper term. (*Walker I*, *supra*, E067404.) The People conceded that the court should not have relied upon the GBI and the two felony convictions that were the bases of the prior prison conviction and prior serious felony conviction enhancements to impose the upper term. (*Ibid*.)

We agreed that the court was not permitted to use "the fact" of the GBI enhancement to impose the upper term. However, we determined that the court relied on several reasons for imposing the upper term including "the GBI, [defendant's] history and his record [and] all of the prison sentences he's had." Thus, it was clear from the court's statement of reasons that it did not use "the fact" of defendant's prior conviction enhancements as aggravating circumstances. Rather, the court relied on defendant's "history and his record."

We noted, "In citing defendant's history, record, and numerous prison sentences, the court apparently relied on the aggravating factors that defendant's prior convictions

7

were numerous and that he served multiple terms in prison or county jail. [Citation.] His criminal history dates back to 1998 and includes 11 infractions, 10 misdemeanors, and four felony convictions. The felony convictions were for assault with a deadly weapon [citation] and inflicting corporal injury on a spouse [citation]. The record shows that defendant has spent numerous days in jail and several years on probation for his misdemeanor convictions. He has also been sentenced to at least three prison terms. We further note that the court heard and considered defense counsel's argument regarding mitigating circumstances, namely that there was "great provocation." However, it found no mitigating factors." (*Walker I*, *supra*, E067404.)

We concluded that defendant could not show prejudice from defense counsel's failure to object to the dual use of facts, and that the court properly imposed the upper term. (*Walker I*, *supra*, E067404.) However, we remanded the matter for resentencing pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.).

On remand from this court, defense counsel filed a sentencing memorandum inviting the court to strike the prior serious felony conviction and prior strike conviction enhancement and resentence defendant. Defense counsel argued the court should exercise its discretion to do so based largely on defendant's "exemplary behavior" as a "model inmate." The People filed opposition to defendant's invitation for the court to dismiss the enhancement and the strike prior. The People argued, in part, that defendant's "recidivist history and public safety concerns" militated against striking any of defendant's enhancements.

8

At the hearing on February 7, 2020, the court noted it had reviewed the remittitur, the probation report, defense counsel's resentencing memorandum, the People's opposition, and the sentencing transcript. In reviewing the sentencing transcript the court stated, "I didn't see anywhere in there that I made such a statement where I would say, you know, [defendant], you know, I realize this is a long time. If I had discretion, I would strike the strike. I would strike the nickel prior. I would do these things." "So in looking at the transcript, it didn't indicate in there anything about my views on it was too much time, I wish I had discretion on this, nothing of that nature. In fact, it was quite the opposite. I think I said something like [defendant] fits squarely under three strikes and there was no reason to grant his *Romero* motion. I could not say he fell outside of the whole point behind three strikes."

Defense counsel argued, "the Court has an option to go all the way to striking the strike and imposing probation if it wanted to take such a leap of faith. [¶] . . . [¶] . . . The defense simply is saying it really comes down to the weight the Court chooses to give [defendant's] behavior over the last three, four years."

The court declined to revisit its decision on the *Romero* issue: "So nothing in my mind has changed. [Defendant's] history is still the same. The offense is still the same. This person was—to recap briefly, two black eyes with bruising and swelling, bruising to the left side of her face, pain and bleeding to the nose and felt broken, pain to her jaw, had trouble talking for a few days following the attack, a cut above her eye, scratches to her face. Her top teeth felt like they were hurt. They felt like they were going to fall out. They were numb. The ones on her left side felt numb. Her teeth felt numb. She was in a

9

lot of physical pain, her head was hurting, everything was hurting for several days. The GBI enhancement was found true."

The court further explicated, "[Defendant's] history of domestic violence dates back to 2001 when he was initially granted probation out of San Bernardino for a DV case, a 273.5. He then promptly violates that probation because he picked up a 245(a)(1) wherein he was sent to prison for two years. He gets paroled and then violates his parole at least six times in 2005. [¶] He's then charged in 2007. And then in 2007, guess what happens? He gets convicted of another 273.5 and a 245(a) (1). And he's sent to prison for four years. He gets paroled and then violates his parole at least three times. He gets discharged in 2012. He commits this case, this violation in 2014. Not even two years goes by and he commits another act of violence against another woman causing great bodily injury. [¶] This is not a person that I'm going to show mercy to, that I'm going to give them a break, that I'm going to wash away the strike prior or the prison priors. They have not earned that. I'll do it if I think the person's earned it. I've got no problem doing it, but it—the—the history speaks for itself. And the case in chief speaks for itself. [¶] . . . [¶] . . . This type of history to me indicates a fundamental systematic . . . issue with the defendant's behavior that requires a lengthy sentencing not only to give him time to work on that, but to protect the public from this ever happening again." The court declined to exercise its newfound discretion to strike the nickel prior.

Subsequently, defendant personally argued at length that his efforts in programs to better himself since reaching prison warranted an exercise of the court's discretion to

10

strike the nickel prior. Defendant contested the court's finding that he had multiple parole violations, asserting that he was "never convicted of a single violation."

The court noted that it was just going off what was contained in the probation officer's report and that, regardless, "[i]t still doesn't wash away the 11-year history of domestic violence." The court continued, "if what I'm doing here is balancing those against the history that you have displayed for 11 years leading up to the instant offense, it is—it is—it is not something that just causes me to find that it is in the interest of justice to strike the nickel prior. Okay. It is too lengthy. Too many victims. Too many severely injured people, women, too many times in prison." Nonetheless, pursuant to Senate Bill No. 136, the court struck both defendant's prior prison term enhancements resulting in a one-year reduction in defendant's sentence.

## II. DISCUSSION

Defendant contends the matter must be remanded for resentencing pursuant to Senate Bill No. 567, which creates a presumption for the imposition of the middle term at sentencing. Defendant maintains that "reliance upon a defendant's criminal history, including his record of prior jail or prison terms, is not permitted under [amended] section 1170 [(Stats. 2021, ch. 731, § 1.3)], which limits the upper term to 'circumstances in aggravation of the crime' that have been proven beyond a reasonable doubt or stipulated to by the defendant."

The People respond that any error is harmless because, pursuant to amended section 1170, subdivision (c), "the trial judge may also rely on certified records of a defendant's prior convictions in determining the sentence to impose without submitting

11

the prior convictions to a jury." The People argue that the "facts surrounding [defendant's] criminal history are not in dispute, were documented in the probation report, and would be easily verifiable using certified records. . . . Therefore, the jury would have found any of these circumstances true beyond a reasonable doubt had they been presented, rendering any error . . . harmless."

Defendant replies, "Although a trial court may rely upon a defendant's criminal history to impose the upper term under the amended law, that does not render the error harmless in this case, because no certified records of [defendant's] alleged history of domestic violence was submitted to the court." Defendant also maintains that the "error" cannot be deemed harmless where the upper term was based, in part, on the impermissible factor of the victim's injury. We agree with the People.

"Effective January 1, 2022, our determinate sentencing law, section 1170, was amended in several fundamental ways. [Citations.] Relevant here, Senate Bill No. 567 amended section 1170, former subdivision (b) by making the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist." (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038 (*Flores*); see *People v. Lopez* (2022) 78 Cal.App.5th 459, 464 (*Lopez*).) "Under this change in law, a trial court 'may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Flores*, at p. 1038, fn. 10; see *Lopez*, at p. 464.)

12

Under amended section 1170, subdivision (b)(3), sentencing courts are also permitted to "'consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.'" (*Lopez, supra*, 78 Cal.App.5th at pp. 465-466.) "[T]he amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal." (*Flores, supra*, 73 Cal.App.5th 1032, 1039; see *Lopez*, at p. 465.)

"[W]here a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial." (*Lopez, supra*, 78 Cal.App.5th at p. 465 ["'The failure to submit a sentencing factor to a jury may be found harmless if the evidence supporting that factor is overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding."'"]; compare *Flores, supra*, 75 Cal.App.5th at pp. 500-501 ["'[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,' the error is harmless."].)

Under section 1170, subdivision (b)(3), the "relevant prejudice question is whether we can be assured that the trial court w*ould have exercised its discretion to impose the upper* term based on a single permissible aggravating factor, or even two or three permissible aggravating factors, related to the defendant's prior convictions, when the

13

court originally relied on both permissible and impermissible factors in selecting the upper term. When a trial court increases a defendant's sentence by relying on factors that are inapplicable, duplicative, or improperly weighed, a reviewing court assesses the prejudice to the defendant by determining whether it is reasonably probable that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance on such factors." (*Lopez*, *supra*, 78 Cal.App.5th at pp. 467-468 [Reversing and remanding for further proceedings where the record did "not clearly indicate that the trial court would have exercised its discretion to impose an upper term based on an aggravating factor relating to [the defendant's] prior convictions, particularly given that the court relied on a long list of aggravating factors in selecting the upper term."].)

We hold that it is not reasonably probable the court would have imposed a sentence more favorable to defendant in absence of its reliance on the improper GBI factor. Here, the evidence in support of the court's properly relied upon aggravating factor, defendant's criminal history, is "'overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding."'" (*Lopez*, *supra*, 78 Cal.App.5th at p. 465.) We hold that the court or the jury, "'applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance," specifically defendant's criminal history, such that any error in not submitting that factor to a jury or court trial is harmless. (*Flores*, *supra*, 75 Cal.App.5th at p. 500.)

First, contrary to defendant's contention, certified records of defendant's prior criminal history were admitted into evidence at the court trial on defendant's prior convictions. Those records reflect that in 2001, defendant pled guilty to assault with a

deadly weapon (§ 245, subd. (a)(1)) and infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)). They further reflect that in 2007, a jury convicted defendant of infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)). Still further they reflect that in 2016, a jury found defendant guilty of infliction of corporal injury on a spouse. (§ 273.5, subd. (a).) We previously determined that it was clear from the court's statement of reasons that it did not use "the fact" of defendant's prior conviction enhancements as aggravating circumstances. Rather, the court relied on defendant's "history and his record." (*Walker I*, *supra*, E067404.) Thus, based on these certified records alone, a jury, or the court, would have found the aggravating circumstance of defendant's criminal history true beyond a reasonable doubt.

Second, even if those certified records admitted below were insufficient to find the aggravating factor of defendant's criminal history true beyond a reasonable doubt, certified records of defendant's additional criminal history would have been readily available to show the aggravating factor true beyond a reasonable doubt. Here, the probation officer's report reflects that defendant had convictions for 10 prior misdemeanor offenses and four prior felony convictions, the latter of which included two prior cohabitant abuse and two prior assault convictions. Defendant had previously had his probation revoked and had numerous prior parole violations.

In our previous opinion we found that "[i]n citing defendant's history, record, and numerous prison sentences, the court apparently relied on the aggravating factors that defendant's prior convictions were numerous and that he served multiple terms in prison

15

or county jail. [Citations.] His criminal history dates back to 1998 and includes 11 infractions, 10 misdemeanors, and four felony convictions. The felony convictions were for assault with a deadly weapon [citation] and inflicting corporal injury on a spouse [citation]. The record shows that defendant has spent numerous days in jail and several years on probation for his misdemeanor convictions. He has also been sentenced to at least three prison terms." (*Walker I*, *supra*, E067404.) Thus, defendant's criminal history, is "'overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding."''" (*Lopez*, *supra*, 78 Cal.App.5th at p. 465.)

Third and finally, the record clearly indicates that "the trial court would have exercised its discretion to impose an upper term based on an aggravating factor relating to [defendant's] prior convictions," given that the court relied on only two aggravating factors in selecting the upper term. (*Lopez*, *supra*, 78 Cal.App.5th at p. 468.) Here, in imposing the upper term, the court reasoned, "there's nothing to support the idea that there was anything mitigating in there going on and that because of the GBI, because of his history and his record, I find that the aggravating circumstances far outweigh any mitigation whatsoever and absolutely support a finding of upper term, especially given all of the prison sentences he's had."

On remand, the court stated, "So nothing in my mind has changed. [Defendant's] history is still the same. . . . [¶] [Defendant's] history of domestic violence dates back to 2001 when he was initially granted probation out of San Bernardino for a DV case, a 273.5. He then promptly violates that probation because he picked up a 245(a)(1) wherein he was sent to prison for two years. He gets paroled and then violates his parole

16

at least six times in 2005. [¶] He's then charged in 2007. And then in 2007, guess what happens? He gets convicted of another 273.5 and a 245(a) (1). And he's sent to prison for four years. He gets paroled and then violates his parole at least three times. He gets discharged in 2012. He commits this case, this violation in 2014. Not even two years goes by and he commits another act of violence against another woman causing great bodily injury. [¶] This is not a person that I'm going to show mercy to, that I'm going to give them a break, that I'm going to wash away the strike prior or the prison priors. They have not earned that. I'll do it if I think the person's earned it. I've got no problem doing it, but it—the—the history speaks for itself. And the case in chief speaks for itself. [¶] . . . [¶] . . . This type of history to me indicates a fundamental systematic . . . issue with the defendant's behavior that requires a lengthy sentencing not only to give him time to work on that, but to protect the public from this ever happening again." Defendant's subsequent efforts to improve himself did not "wash away the 11-year history of domestic violence." "[I]f what I'm doing here is balancing those against the history that you have displayed for 11 years leading up to the instant offense, it is—it is—it is not something that just causes me to find that it is in the interest of justice to strike the nickel prior. Okay. It is too lengthy. Too many victims. Too many severely injured people, women, too many times in prison." Thus, the court's primary and extended focus was on defendant's criminal history. It is not reasonably probable that the court would have imposed a more favorable sentence absent its reliance on the improper GBI factor.

17

## III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____

Acting P. J.

We concur:


MILLER _____

J.


SLOUGH _____

J.